UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| AMELIA H. O'REILLY | CIVIL ACTION |
| VERSUS | |
| MICHAEL J. ASTRUE,[1] COMMISSIONER OF SOCIAL SECURITY | NO. 06-898-FJP-CN |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, January 10, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[1] Michael J. Astrue is the new Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| AMELIA H. O'REILLY | CIVIL ACTION |
| VERSUS | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | NO. 06-898-FJP-CN |

## MAGISTRATE JUDGE'S REPORT

Plaintiff Amelia H. O'Reilly seeks judicial review of a final decision of the Commissioner of Social Security, which denied her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.  In making that final decision, the Administrative Law Judge reached the fifth step of the five-step sequential disability analysis set forth in 20 C.F.R.  § 416.920(b)-(f).[2]

## FACTS AND PROCEDURAL HISTORY

Plaintiff filed an application for disability income benefits in August 1998, claiming an inability to work since July 10, 1998, due to depression, chronic head and neck pain (including migraines), chronic fatigue, fibromyalgia, and sleeping problems (Tr. 71-73, 85.) The application was denied initially and on reconsideration. (Tr. 38-39.)  Plaintiff requested a hearing before an Administrative Law Judge (ALJ) which was held on March 9, 2000.  On March 31, 2000, ALJ Curran issued an adverse decision concluding that plaintiff was not disabled. (Tr. 53-66.)   Plaintiff requested a review from the Appeals Council and on September 16, 2002, the Appeals Council accepted jurisdiction and remanded the case for further proceedings, with instructions to further evaluate the claimant's allegations of a

---

[2] Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

2

mental impairment in accordance with the regulations; further evaluate the medical source statement of Dr. Albert B. DeVillier, M.D.; obtain updated medical records, if any; and obtain testimony from a vocational expert. (Tr. 67-70.)

On August 2, 2005, another administrative hearing was held, however this hearing was continued so that plaintiff could obtain legal representation. On February 7, 2006, the hearing continued before ALJ Michael Kirkpatrick. Plaintiff and a vocational expert (VE) appeared and testified at the hearing. (Tr. 501.)[3] The ALJ issued an adverse decision on March 23, 2006, finding that plaintiff was not disabled from her alleged disability onset date of July 10, 1998, through June 30, 2000, the date she was last insured for DIB under the Act (Tr. 34-37.)[4]

The ALJ specifically found that plaintiff met the non-disability insured status requirements and has not engaged in substantial gainful activity since her alleged disability onset date of July 10, 1998. (Tr. 34, Findings 1 and 2.) The ALJ also found that Plaintiff suffers from impairments which, in combination, are considered to be severe, however these impairments, either alone or in combination, do not meet or equal a listed impairment.[5] (Tr. 34-35, Findings 3 and 4.) The ALJ then found that plaintiff could not

---

[3] A lay witness Witt Cooper was also present, however he did not testify.

[4] Claimant must prove that her disability began before the date she was last insured (DLI) for social security disability benefits to be entitled to those benefits. 20 C.F.R. §404.404.1(b). Once there is a final decision denying benefits dated after the DLI, the legal doctrine of res judicata prevents the applicant from filing a claim for and obtaining disability benefits. 20 C.F.R. § 404.1597(c).

[5] The ALJ found that plaintiff had a combination of impairments that were "severe" as set forth in the guidelines: degenerative disk disease and minimal anterior disk bulge at the C5-6 level of the cervical spine, not causing spinal stenosis, with status post July 16, 1996, successful anterior fusion surgery at C5-6 that is currently characterized as stable; mild degenerative changes at the C4-5 level of the cervical spine absent evidence of bulging, herniation, or stenosis; subjective complaints of headaches but with no brain MRI or EEG or other such objective medical signs or findings or any pathological abnormality of the head or brain; mild dextroscoliosis of the thoracic spine, per a chest x-ray; status post silicone breast implants in the remote past; an episode of diverticulosis in the remote past; an episode of endometriosis; hypercholesterolemia; dyspareunia, psoriasis characterized by the treating physician as "stable;" degenerative joint disease; possible

perform any of her past relevant work, however retained the residual functional capacity to perform a wide range of unskilled, "light" work with the following restrictions: to lift and/or carry at least ten pounds frequently and twenty pounds occasionally; to stand and/or work for at least six hours total during an eight hour work day; to sit for at least six hours total during an eight hour work day; and to understand, remember, and carry out simple, routine, unskilled tasks (but no detailed, semi-skilled tasks or complex, skilled tasks). The ALJ also found that plaintiff did not have any other work-related functional limitations, and according to the regulations, if a person can perform light work, she can also perform sedentary work, unless there are additional limiting factors such as loss of fine dexterity, or inability to sit for six hours during an eight hour work day.[6] The ALJ found no such limiting factors. (Tr. 35-36, Finding 6-7.)

Based on the medical vocational guidelines and the testimony of a vocational expert, ALJ Kirkpatrick found that plaintiff was not disabled and could make a successful vocational adjustment to work which exists in significant numbers in the economy. (Tr. 36, Finding 11.)

Plaintiff appealed ALJ Kirkpatrick's decision, and on September 22, 2006, the Appeals Council denied plaintiff's request for review, thereby making ALJ Kirkpatrick's March 23, 2006 decision the final decision of the Commissioner (Tr. 6-8, 37.) Plaintiff now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g). This appeal is timely.

---

fibromyalgia or fibrosis or myalgia; osteoporosis; a brief episode of right should tendinitis; major depression, secondary to general medical condition; Post Traumatic Stress Disorder (PSTD) ; mood and anxiety disorders; and somatization disorder. (Tr. 34-35).

[6] The ALJ cites to 20 C.F.R. §§ 404.1567 and 416.967.

## ANALYSIS

In reviewing the ALJ's decision denying supplemental security income benefits, the Court is limited to two inquiries: (1) whether the decision is supported by substantial evidence in the record as a whole, and (2) whether the ALJ applied the proper legal standard.[7]  In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment for the ALJ's even if the evidence preponderates against the ALJ's decision.  Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion.  A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position.[8]  If substantial evidence supports the administrative finding, we may then only review whether the ALJ applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations.[9]

The burden of proof in supplemental security income cases rests upon the claimant.[10]  The claimant bears the burden of proof with respect to the first four steps of the five-step sequential analysis.  At step three, in order to secure a finding of disability without

---

[7] Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005); Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

[8] Id.

[9] Cook v. Heckler, 750 F.2d 391, 393, citing Hernandez v. Heckler, 704 F.2d 857, 859 (5th Cir. 1983); Bormey v. Schweiker, 695 F.2d 164, 168 (5th Cir. 1983), *cert. denied* ---- U.S. ----, 103 S. Ct. 3091, 77 L.Ed.2d 1351 (1983)("...we must also determine whether... [commissioner] applied the proper legal standard... and whether the proceedings below were conducted in conformity with the applicable statutes and regulations.")

[10] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999); Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

5

consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations.[11] Then, if at step four the claimant can prove that she no longer is able to work in her past relevant work, then and only then does the burden shift to the ALJ to establish that the claimant nonetheless has the ability to engage in other substantial gainful activity.[12]

In the instant case plaintiff was found not disabled at step five. Plaintiff appeals this decision setting forth two errors. Plaintiff argues that the ALJ did not following the 2002 Appeals Council's order and sets forth the following errors: 1) not adequately determining whether or not the job base is eroded by moderate difficulties in activities of daily living, social functioning, and concentration, persistence and pace; and 2) not evaluating the medical opinion of Albert B. DeVillier, MD in accordance with 20 CRF 404.1527 and SSR 96-5p, and likewise by not properly evaluating the other three (3) physicians' medical opinions, including a consultative examiner for the Social Security Administration, and summarily dismissing them in violation of SSR 96-2p.[13]

---

[11] Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

[12] Rivers v. Schweiker, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

[13] In its reversal of ALJ Curran's decision the Appeals Council specifically wrote:

The decision does not contain an adequate evaluation of the claimant's alleged or reported mental impairment in accordance with the provisions set forth in 20 CFR 404.1520a. The decision, Page 8, states that the unskilled occupational base is not significantly eroded, but the Psychiatric Review Technique form appended to the decision indicates that the claimant has moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and often has deficiencies of concentration, persistence, or pace. It is not clear that such limitations do not erode the occupational base.

The decision does not evaluate the medical opinion expressed by Albert B. DeVillier, MD (Exhibit 5F) as to the claimant's ability to perform work related functions, nor did it indicate the weight given to such opinion evidence. Although the Administrative Law Judge noted Dr. DeVillier's opinion that the claimant is not capable of being gainfully employed, it was not evaluated in accordance with 20 CFR 404.1527 and Social Security Ruling 96-5p.

The Appeals Council went on to direct the ALJ to obtain updated medical records for the period at

In short, the Appeals Council's September 2002 remand order vacated the prior decision by ALJ Curran because the decision did not contain an adequate evaluation of plaintiff's alleged mental impairment. (Tr. 68.)  The Appeals Council found, specifically, that a) there was an unexplained inconsistency between the ALJ's conclusion that the unskilled job base was not significantly eroded and his moderate restrictions noted on the Psychiatric Review Technique (PRT) form appended to his decision; and b) that the ALJ never discussed the medical opinion expressed by Albert B. DeVillier, MD, that claimant was not capable of being employed. (Tr. 68-69.)

In the new decision, ALJ Kirkpatrick found that plaintiff retained the residual functional capacity to perform a wide range of unskilled, "light" work with restrictions; that plaintiff did not have any other work-related functional limitations; and, that plaintiff was not disabled and could make a successful vocational adjustment to work which exists in significant numbers in the economy. (Tr. 36, Finding 11.)

As stated above, plaintiff argues that ALJ Kirkpatrick did not follow the Appeals Council's remand order with respect to evaluating her mental impairments.  Therefore, the Court will first determine whether ALJ Kirkpatrick  properly evaluated plaintiff's psychiatric

---

issue from the claimant's treating and other medical sources, including clinical findings, test results, and medical source statements about what the claimant can do despite her impairments.  The Council also stated that if this additional evidence does not adequately clarify the record, the ALJ will recontact the medical sources for further information, and if necessary, the ALJ will obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments.

The Council went on further and instructed the ALJ to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base, and stated that the hypothetical questions should reflect the specific capacity/limitations established by the record as a whole, and the vocational expert should be asked to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy.  And further, the vocational expert will be asked to resolve any conflicts between the occupational evidence and the information in the Dictionary of Occupational Titles (DOT).

medical records and then determine if the unskilled job base was eroded by plaintiff's mental impairment and moderate functional restrictions.

Dr. DeVillier was a psychiatrist who examined plaintiff on October 25, 1998 at the request of the Social Security Administration and again on September 16, 1999. (Tr. 216-217 and 278-281, respectively.) In his 1998 assessment, Dr. DeVillier diagnosed plaintiff as follows: Axis I: major depression, recurrent, severe secondary to her medical condition; Axis II: no Diagnosis; Axis III: numerous medical problems including fibromyalgia and chronic pain disorder; Axis IV: the stress factor is the applicant's severe medical problems; and Axis V: GAF 55 (current). Dr. DeVillier then stated that plaintiff's prognosis was poor and, in his opinion, she was not capable of being gainfully employed. (Tr. 217.)

In his assessment in 1999, Dr. DeVillier diagnosed plaintiff as follows: Axis I: major depression, recurrent somatization disorder; Axis II: no diagnosis; Axis III: chronic pain disorder; Axis IV: her major stress seems to be the pain with which she suffers; and Axis V: Global Assessment of Functioning (GAF) of 60. He further stated that plaintiff's prognosis was guarded. (Tr. 279.) Dr. DeVillier attached a Medical Assessment of Ability to Do Work Related Activities form to his examination report. In this assessment, Dr. DeVillier noted that plaintiff's individual abilities were "unlimited/very good" in the categories of following work rules; using judgment with public; functioning independently; understanding, remembering and carrying out complex, detailed and simple job instructions; and maintaining personal appearances. He went on to indicate that plaintiff's ability to relate to co-workers; deal with public; interact with supervisors; behave in an emotionally stable manner; relate predictably to social situations; and demonstrate reliability were "good." The only "fair" check marks were in plaintiff's ability to deal with work stress

and maintain attention concentration.  None of plaintiff's abilities were of the "poor/none" category.

Dr. DeVillier's opinion in 1998 was that plaintiff was not capable of being gainfully employed.  However, one year later in 1999, while his written opinion was that plaintiff's prognosis was "guarded", his assessment of plaintiff's abilities were that plaintiff did not have impairments that rose to the level of severity that would make her disabled.  Further, in both 1998 and 1999, Dr. DeVillier noted that plaintiff, if given benefits, would be able to manage them in her own best interest.  Due to these inconsistencies, the ALJ did not afford any evidentiary weight to Dr. DeVillier's disability opinion. (Tr. 29.)

Plaintiff was also seen by Dr. Richard E. Donovan, M.D. on November 12, 1998.  While Dr. Donovan mostly saw the claimant and her husband for marital counseling, plaintiff was seen this date because of pain and depression. (Tr. 226.)  Dr. Donovan opined that plaintiff's thoughts were tight, coherent and goal directed, and that she was oriented to person, place, time, and situations.  Her attention was normal, her memory, recent and remote and immediate, was normal.  Dr. Donovan's records show that plaintiff suffered from a depression and pain disorder, fibromyalgia, migraine headaches, severe stressors at work and was functioning at a GAF level of 60.  Dr. Donovan's intention was to treat her with some combination therapy medication.  (Tr. 26-27, 226-227.)  Further, Dr. Donovan also implied that she was unable to carry out simple instructions or do simple work or respond to supervision or deal with changes in routine working.  These comments were in response to a form sent to him by plaintiff's attorney. (Tr. 286-288.)

Plaintiff's counsel also provided Dr. Merrill Laurent, M.D. a pre-printed "check-off" form for completion. Dr. Laurent's responses suggest that plaintiff is unable to do even sedentary work. (T. 260.)

On December 13, 1999, plaintiff was seen by another psychiatrist, Dr. Adrian Blotner, M.D., complaining of pain and marital problems. In his mental status exam, Dr. Blotner found plaintiff to be alert, oriented, cooperative with the interview; her body habits and activity exhibit mild distress due to pain; her attention and concentration were mildly impaired due to her pain. Further, he opined that plaintiff's mood and affect were mild to moderately depressed but not agitated or anxious; her thought processes and associates were fairly well organized and her insight and judgment were within normal limits. Dr. Blotner diagnosed plaintiff with major depression-recurrent, and functioning at a GAF level of 55. Dr. Blotner's medical records indicate that he saw plaintiff several times, however his findings are virtually unchanged and he was treating her with prescription medication. While plaintiff's subjective complaints are noted by Dr. Blotner, the level of treatment and the diagnosis simply do not coincide. Further, each visit indicates that plaintiff was functioning at a GAF level of 55. (Tr. 315-322.)[14]

The ALJ reviewed the psychiatric medical evidence within the guidelines of the current regulations as set forth in his decision. (Tr. 28-29.) The ALJ found that the records did not establish a medically determinable impairment or combination of impairments that could reasonably be expected to cause such dramatic and severe functional limitations as

---

[14] A GAF score of 51-60 notes "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." *See Diagnostic and Statistical Manual of Mental Disorders* at pp. 33-34 (4th ed. text rev., 2000) (unless otherwise indicated by the examiner, a GAF score is generally for the current period, i.e. level of functioning at the time of evaluation only).

to hamper plaintiff's ability to work as suggested by these physicians. The ALJ went on to state that none of their functional capacity opinions provided supportive medical documents, and that they simply based their assessments on plaintiff's subjective complaints and allegations.[15]

The ALJ then reviewed the medical records under 20 C.F.R. 404.1520a, 416.920a, relating to evaluating the severity of mental impairments for adults. Under the regulations, if a plaintiff is found to have a severe mental impairment, the ALJ must then rate the degree of functional limitation resulting from the impairment in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[16] The Court agrees that the records are inconsistent with respect to functional limitations. On several occasions plaintiff was reported to have a GAF score in the range of 55-60, which according to the *Diagnostic and Statistical Manual of Mental Disorders* implies only moderate restrictions on functional limitations. As stated above the ALJ found that the functional capacity opinions of Dr. Devillier, Dr. Donovan, Dr. Matrisciano, Dr. Blotner, and Dr. Laurent were deficient and without supportive medical documentation and therefore did not give them evidentiary weight.

Therefore, the ALJ then reviewed the opinions of the state medical and psychological consultants employed by the Social Security Administration.[17] The ALJ

---

[15] Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)(a treating physician's opinion on the nature and severity of a claimant's impairment is give "controlling weight" only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence.)

[16] 20 C.F.R. 404.1520a(c), 416.920a(c).

[17] Under SSR 96-6p, state agency consultants must be treated as expert opinion evidence of non-examining sources at the ALJ level of administrative review and the ALJ must not ignore these opinions and must explain the weight given to them.

concluded that plaintiff suffered from a severe medically determinable mental impairment in contrast to the opinions of the state agency physicians who reviewed the documentary evidence and found plaintiff's mental impairment not severe.[18]  However, he did find that the record establishes that plaintiff's mental impairments cause no more than "moderate" functional limitations in the area of activities of daily living, maintaining social functioning, concentrations, persistence, and pace.  He further found that plaintiff never suffered from any episodes of decompensation. (Tr. 30.)

In her appeal, plaintiff sets forth contrasts in defendant's interpretation of the evidence and her interpretation of the evidence with regard to the psychiatric records.  The Court has previously discussed the records of Dr. Devillier and has set forth the inconsistencies therein and will not reiterate.  Dr. Blotner's records show, as plaintiff's brief points out, that plaintiff exhibited mild distress due to pain, her attention and concentration were mildly impaired due to the severity of symptoms, and she exhibited a mild to moderately depressed mood and affect.[19]  This is in line with the decision of the ALJ, in which he found moderate limitations in plaintiff's four broad functional areas.

The ALJ considered these opinions under 20 C.F.R. 404.1527, relating to treatment relationship, supportability, consistency and specialization, and a reading of the decision indicates that the ALJ was well versed in his duty to evaluate the opinions within these

---

[18] The ALJ notes that all three of the psychiatrists assessed that the plaintiff's mental impairments did not cause any "moderate" or "marked" or "extreme" functional limitations, that there was no evidence of any episodes of decompensation and that she simply did not have any "severe" mental impairments (Tr. 247-257), however he gave the plaintiff the benefit of the doubt and found that her mental impairments were severe at Step 2 of the sequential evaluation process. (Tr. 29-30.)

[19] Tr. 316, and plaintiff's brief, p. 13.

regulations.[20]  With respect to plaintiff's cervical spine impairment, a review of the record reinforces and substantiates the ALJ's finding that the treatment was relatively conservative following her cervical spine fusion surgery, i.e. prescribing modest dosages of medications; and each of them reported actual objective medical signs and findings that were inconsistent with allegations of disability and probative of an ability to perform at least a wide range of unskilled, light work.  Further, with respect to plaintiff's cervical impairments, the record indicates that her cervical fusion was solid and stable and that there were no other significant cervical spine abnormalities. (Tr. 25.)  Dr. Matrisciano, who examined plaintiff on several occasions in 1997 after her surgery, opined that she had a fair range of motion of the neck and that examination of her extremities was normal with no evidence of any cyanosis or clubbing or edema and that her neurological examination was normal with normal reflexes, gait and no motor or sensory deficits. (Tr. 25, 175-190.)  This evidence is obviously inconsistent with plaintiff's allegation of being unable to perform even sedentary work.

Considering the above, the Court finds first that the ALJ followed the proper legal standard in evaluating the opinions of plaintiff's treating physicians and that he was proper in finding that plaintiff only suffered from moderate functional limitations.  Further, ALJ Kirkpatrick thoroughly addressed the opinion of Dr. Devillier as instructed by the Appeals Council, thus plaintiff's argument is without merit.

---

[20] See, Tr. 28-30.  The ALJ went into great detail relative to this evaluation and found that that plaintiff's orthopaedic physicians saw the claimant on only a few occasions, and that their treatment of the claimant was relatively conservative after her cervical spine fusion surgery and that each reported actual objective medical signs through examinations that were inconsistent with allegations of disability.  With respect to consistency, the examining psychiatrists reported GAF scores in the range of 55 to 60, which is inconsistent with the allegations of disabling symptoms or functional limitations.  The ALJ stated that these factors severely impact the criteria of supportability and consistency which are particularly troublesome herein and therefore he was unable to give evidentiary weight to their opinions regarding plaintiff's functional ability.

The Court will now discuss the Appeals Council's instruction relative to the erosion of the unskilled job base. Given the above, the ALJ found plaintiff to have the residual functional capacity (RFC) to perform a wide range of unskilled, light work. (Tr. 31.) Since the ALJ also found that plaintiff was unable to perform her past relevant work, the burden shifted to the ALJ to show that there are other jobs to which the claimant is able to make a successful vocational adjustment. Defendant correctly points out that the September 2002 remand order was concerned with the unexplained inconsistencies between ALJ Curran's conclusion that the unskilled job base was not significantly eroded, and his moderate restrictions noted on the Psychiatric Review Technique (PRT) form, given that the decision relied exclusively on the grid rules to find that Plaintiff could perform other work existing in significant numbers in the economy (Tr. 60-61, 68.) The use of the Grids is permissible even though there is a non-exertional impairment, provided the non-exertional impairment does not significantly diminish the claimant's residual functional capacity to perform the full range of activities listed in the Grids.[21] In this case, ALJ Kirkpatrick correctly pointed out that if claimant's non-exertional limitations did not significantly erode the light occupational base, the Grid Rule 202.21 indicated that a finding of "not disabled" would be appropriate. However, he continued, that rule cannot be directly applied in this case, because there are non-exertional functional limitations. (Tr. 33.) Therefore, ALJ Kirkpatrick also called upon a vocational expert to assist him. The ALJ specifically inquired of the VE to assist him in exploring the extent to which the number of occupations within the "light" occupational base have been eroded by the claimant's particular limitations.

---

[21] Fraga v. Bowen, 810 F.2d 1296, 1303-04 (5th Cir. 1987) (in order for grids to be applied absent vocational testimony, the RFC must exactly coincide with the exertional level reflected in the applicable Grid rule, or the non-excertional impairment must constitute only an insignificant limitation upon the RFC.)

14

After being given the ALJ's hypothetical question, the vocational expert identified specific occupations and their availability in the national and regional economy that plaintiff could still perform based on her age, education, RFC and prior work history.  He listed cashier, motel cleaner, and mail clerk (private business not USPS).  The VE also added that there were no conflicts between his testimony and the information that is contained in the Dictionary of Occupational Titles. (Tr. 33, 522-525.)

Therefore, the Court agrees with the commissioner and finds that in the context of determining the erosion of the job base, the ALJ's determinations that plaintiff has never experienced episodes of decompensation and his moderate rating of plaintiff's functional limitations in the areas of daily living and maintaining social functioning, as well as in the areas of concentration, persistence and pace, have been thoroughly explained.  Therefore, plaintiff's argument that ALJ Kirkpatrick failed to follow the Appeals Council's order in this regard, is also without merit.

For the above reasons, the Court finds that there is substantial evidence supporting the ALJ's decision that Plaintiff is not disabled, and that the decision meets with relevant legal standards.

## RECOMMENDATION

Accordingly, it is recommended that the ALJ's decision be affirmed and that the Plaintiff's appeal be dismissed, with prejudice, and judgment be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, January 10, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**